| 10 | 87 |
| s26s | 330 |

[No. 1217.]

## Chicago, Burlington & Quincy Railroad Co. v. Roberts.

**1. Motion for Nonsuit.**

Error of the trial court in refusing a motion for nonsuit at close of plaintiff's testimony is cured by defendant introducing evidence that tends to supply the deficiency in plaintiff's testimony.

**2. Railroad Company—Killing Animal Prima Facie Negligence.**

By statute (Session Laws, 1893, p. 406) the killing or injuring of animals by a railroad company is *prima facie* evidence of the negligence of the company and of its liability for the value of such animal so killed, unless it shows affirmatively by proof that the killing was not caused by negligence, or unless it shows that its road was inclosed with a good and lawful fence.

**3. Evidence.**

The admission of incompetent evidence over objection should not reverse a case when it is clear such evidence could have worked no prejudice.

**4. Same.**

In a suit against a railroad company for killing an animal a letter from the claim agent of the company to the owner was admissible in evidence as tending to prove acknowledgment of liability.

*Appeal from the County Court of Weld County.*

Messrs. Wolcott & Vaile, for appellant.

Mr. William W. Field of counsel.

Mr. James E. Garrigues, for appellee.

Thomson, P. J., delivered the opinion of the court.

Action by the appellee against the appellant for killing a horse belonging to him. The suit was originally commenced before a justice of the peace, and went by appeal to the county court, where, upon trial, judgment was awarded to the plaintiff, from which the defendant appealed to this court.

It does not appear from the evidence first introduced by

the plaintiff, unless as the result of far-fetched inference, that the plaintiff's horse was killed by the defendant. He testified that he saw the horse going to water on the 18, of December, 1893; and on the morning of the 20, of the same month, he saw him dead by the side of a railroad track, partially buried, with his right shoulder badly bruised. This was the only proof that the plaintiff made on the subject of the killing of the horse; and we are inclined to think that a motion for a nonsuit, offered by the defendant when the plaintiff rested, should have been sustained. But the defendant, instead of abandoning the case at that point, produced the engineer in charge of a locomotive and train of cars which, on the 19, day of December, 1893, passed the locality where the horse was supposed to be killed, who testified that his engine struck a horse at that place, and that the horse fell down when he was struck, but got up and limped away. The plaintiff's horse was black, and the engineer stated that the horse his engine struck was black.

By the provisions of an act of the legislature, approved April 8, 1893 (Session Laws, 1893, p. 406), the killing or injuring of animals by a railroad company is *prima facie* evidence of the negligence of the company, and of its liability for the value of any animal so killed, unless it shows affirmatively, by proof, that the killing was not caused by its negligence, or unless it shows that its road was inclosed with a good and lawful fence. If, in the entire case, there was sufficient evidence to go to the jury of the killing of the plaintiff's horse by the defendant, then *prima facie*, the defendant was liable; and we think the evidence was sufficient. First, it appeared, that the plaintiff's horse was alive and well on the 18, of December, and was lying dead at the side of the track on the morning of the 20, with marks of violence upon him; so that the injuries to the horse must have been received between the 18, and the morning of the 20. Second, the engineer testified that, on the 19, while running his locomotive and train past the place where the horse was found, his engine came into collision with a horse which

answered the description of the plaintiff's horse. The testimony of the plaintiff, and of the engineer, taken together, was, we think, sufficient to warrant the jury in finding that the horse struck by the engine was the plaintiff's horse, and that the horse died in consequence of injuries received from the engine.

There was no pretense that the road was inclosed with any fence; but the defendant, to rebut the presumption of negligence arising from the fact of the killing, examined the engineer as to the attendant circumstances. He testified that the horse was about one hundred yards ahead of the train when first discovered by him; that by reason of a curve in the track the horse could not have been visible sooner. That the horse was running away from the train, so that when he was struck, he was about six hundred feet from the point where he was first seen; that the speed of the train was about thirty-five miles an hour; and that to stop it within that distance was an impossibility. But there was other evidence tending to show that by means of air brakes with which the train was supplied, it could have been stopped in time to avoid the accident. It is true that the witness did not say, in words, that it could have been stopped within six hundred feet. He said only that with the air brakes it could have been stopped. It is argued that as he did not himself limit the distance, his testimony amounted only to a statement that the train might have been stopped within some indefinite section of space, and therefore, derogated nothing from the testimony of the engineer, leaving it uncontradicted. But his testimony was in answer to that of the engineer. The latter had stated that the train could not have been stopped within six hundred feet. Whether it could or not, was a material question in the case; and the witness in answering the engineer's statement, must have spoken with reference to the distance named by the engineer. What he said must be considered in connection with, and interpreted by, what the engineer said. The engineer said that the train could not have been stopped within six hundred feet, and

the effect of the witness's answer to the statement was that it *could* have been stopped within that distance. Naturally and logically, such was the meaning of his language; and it must have been so understood by those who heard it. Neither the court nor the jury needed to be told that any train can be stopped in some distance, with, or without, air brakes.

The court permitted the plaintiff over the defendant's objection to testify to some statements made by the engineer at the trial before the justice, and error is assigned upon the ruling. The evidence was, of course, incompetent. It was mere hearsay, and it was error to admit it. But all there was of it was that there was a passenger train on the road, going east in the morning, called "The Flyer." How that testimony could help the plaintiff, or hurt the defendant, we confess ourselves unable to see. It was not even shown that that was the train which collided with the horse. So far as we can look down into the testimony it was utterly unimportant, and could be productive of neither good nor harm. This error alone would not warrant us in reversing the judgment.

The plaintiff testified that he notified the defendant of the accident four or five days after it occurred, and wrote to its claim agent with reference to the matter. The letter which he wrote was not produced, and is not before us. He introduced the following as the reply which he received:

"Burlington and Missouri Railroad in Nebraska,
"C. B. & Q. R. R. Co. owner.
"Division Superintendent's Office.

"McCook, Neb., Nov. 23, 1893.

"W. W. Roberts,
"Hudson, Colorado.

"*Dear Sir:* Referring to your claim, C. S. 371. I have investigated the matter and find that we have been paying from thirty dollars to thirty-five dollars for such horses as yours. I can allow you thirty-five dollars in settlement of your claim, which, at the present price for horses, I think is all that you are entitled to.

" If this amount is satisfactory, on receipt of your accept-
ance a draft will be sent you in care of our agent at Hudson.

"Yours truly,

"E. HANSON,

" *Claim Agent.*"

Two objections were made to the introduction of this let-
ter: First, that the letter head showed the letter to be that
of an official of the Burlington & Missouri River Railroad
in Nebraska, and therefore, not written by the authority of
the defendant; and, second, that it was incompetent and
inadmissible. In argument its incompetence is said to con-
sist of its being on its face a proposition of compromise,—an
attempt on the part of the claim agent to buy his peace,
irrespective of the justice of the claim made upon him.

1. The letter was received in answer to one addressed to
the claim agent of the defendant company. The presumption
from that fact is that the author of the letter represented
the defendant. We certainly cannot presume that some
stranger, surreptitiously or otherwise, got possession of the
letter of the plaintiff, and answered it. On its face it indi-
cates that the defendant was the owner of the Burlington &
Missouri Railroad in Nebraska, and that it came from the
division superintendent's office of the defendant. From its
appearance, and its contents, and the circumstances under
which it was received, it would be accepted by any person,
accustomed to correspondence, and acquainted with the
method by which business is transacted, as being a response
of the defendant's authorized agent to the letter which was
addressed to him. Whether Mr. Hanson was in fact the
agent of the defendant, was a matter peculiarly within its
own knowledge. The surface appearances were that he was;
and if he was not, the defendant should have shown that he
was not, as it could easily have done; —certainly much more
easily than the plaintiff could have proved that he was.
The fact that it attempted no such proof, while perhaps not
conclusive of anything, strengthens the presumption arising

from the receipt, contents and appearance of the letter. *Prima facie*, we think the letter was the act of the defendant, and admissible in evidence as such.

2. There is nothing on the face of the letter to indicate that it was intended as an offer of compromise.  The defendant did not produce the letter of the plaintiff, and there was no evidence of its contents.  We are, therefore, deprived of the light which it might have shed on the reply.  This reply letter recites an investigation of the matter, and the price the company had been in the habit of paying for such horses. We cannot suppose that it was in the habit of paying out its money upon every claim for damages made against it, without reference to the question whether it was responsible for them or not; or that whenever an animal was found dead in the vicinity of its track, it paid its owner something, without inquiry as to the way in which the animal met its death. No such inference is to be drawn from the agent's letter.  It does not purport to be an offer to pay a portion of a claim on account of which the defendant denied liability, for the purpose of avoiding a lawsuit.  The amount offered was the full value of the horse, as estimated by the defendant, and was based on the price of horses at that time.  The letter amounted, in so far as it amounted to anything, to an acknowledgment of liability upon investigation made, coupled with an offer, based on that investigation, to pay what the defendant regarded as the full damages sustained.  We do not think the second objection tenable.

Evidence having been submitted to the jury, even outside of the letter, upon which, in the exercise of their judgment, they might well find as they did, and the questions of the legitimacy and sufficiency of the evidence, being the only ones before us, it is our opinion that the judgment should be affirmed.

*Affirmed.*